The next matter on our calendar is Tedesco v. I.B.E.W. Thanks. Good morning, counsel. Good morning, your honors. May it please the court, Eric Weinstein for the appellant. I'm in the enviable position today of having to try to convince this court that they were not mistaken the last time we were here. In fact, I'm before two of the very same judges that were here. Welcome aboard, Justice Raji. Everyone acknowledges that the counterclaim asserted against Ms. Tedesco and her claim for unlawful set-off were essentially flip sides of the same coin. The question is what to do about that. It seemed like there was no confusion. The fund asked in its follow-up summary judgment motion, second summary judgment, they asked for a determination, their notice of motion on page A-102, a determination for the amount that they can recover through set-off. Recovery in a counterclaim and recovery through set-off is the same thing. It's the same $33,000. Instead of seeking a judgment against Ms. Tedesco, they said, okay, we're going to take your future valid claims, your money, and we're going to set off up to $33,000. In fact, when they got to the first summary judgment motion, there was no need for a judgment. They claimed it was the U.S. Supreme Court's decision. They had already set off $16,000, the amount that they had actually paid directly to her as reimbursement. And the court said, you cannot recover in a judgment the $17,000 that was paid to her doctors. So had they gotten a judgment against her, it would have been double recovery. They'd already set it off. So I don't understand what the confusion is. I don't think that the fund really was confused, because their notice of motion says it. I think only the district court was confused by this overlap in the claims. In fact, I don't even understand what the whole basis of this secondary coverage language is. That is, they're now claiming that it doesn't matter. I was standing with this court, said it doesn't matter how much Mr. Tedesco's employer's plan would have paid if they had paid a portion of it. Well, the portion they didn't pay is a penalty. So no matter what, no matter the outcome, they would say all we owe is 80% of her co-pay. $12 per doctor's visit, under any circumstance, probably for any claimant. They could have just said in their policy, you know what, this is not secondary coverage. If you're covered in a primary plan by your employer, we are going to pay 80% of your co-pay. So could you help me just, what do you want us to say? The $16,000, two things. Number one is, they have not proven- What do you want us to say? The $16,000 that they set off is Mr. Tedesco's money. They gotta give it back, because they have not proven what, when they apply the subtraction provision, they did not prove how much Mr. Tedesco's plan would have paid. They did not follow this court's mandate, which was tell us how much Mr. Tedesco's plan would have paid on each single claim, they have a list of the claims, they didn't do it. They came back and said, no, we'll give you $12. So she gets paid every cent, and they can't go set off against the other $17,000. That is, they cannot exercise their right of set off, because they haven't proven, they probably cannot prove, they didn't when they had the chance, what Mr. Tedesco's plan would have paid on each particular claim. So the district court, as I understood that court's ruling, said, look, the circuit court, Judge Pooler and I, and was it Judge Jacobs? Yes, sir. Yes. Misunderstood the whole set off because the company has withdrawn its complaint, excuse me, its counterclaim, something I think we didn't acknowledge or at least address when we sent it back. And therefore, there's nothing for me to do, right? Except that, like I said, these are flip sides of the same claim. They withdrew the counterclaim, but it's the right of recovery. The right of recovery could occur under the counterclaim, and it occurred when they exercised the set off rights under the plan. So it's the same thing, whether they say, we're going to recover, because you're going to issue a judgment, $33,000, or we're going to recover through exercising set offs under the plan, the same $33,000. Because even though we owe you money, we're going to keep setting it off until we've achieved- Until we've recovered $33,000. The recovery's the same thing, whether it's an unlawful set off or having to- Has that already been done? They've acknowledged setting off the $16,000 that had been paid directly. They could set off the $17,000, depending on what this court does. All right, so now what do you want us to say, and to whom? Well, to the district court. The district court should enter judgment for Mr. Desco for the $16,000 that was unlawfully set off by the fund. What is the basis for that, because your client sued for recovery of overpayments after it learned that she had not enrolled in health insurance available through her employer. The extent to which the plan withdrew $16,000 is either appropriate or not appropriate, depending on what the payment by the employer's plan would have been. Employer's plan would have been, that's right. So you're not necessarily entitled to $16,000. This, after all, is your claim, not their claim. And you have to show that the $16,000 was inappropriately withheld. Except that it's their subtraction provision. If they want to set off, they have to show, this court said it, they've got to show what Tedesco's plan would have paid. That is, they can't set off a dollar until they say, all right, Mr. Desco, your employer's plan would have paid 500 on this claim, so we're going to deduct 500. They haven't proven that, they haven't shown it, they haven't tried to show it. They were given two opportunities. You lost this claim below, but you're saying that the panel decision allowed you to go back and at least argue about how much of the $16,000 they really got to keep, right? On the first, yes, we lost the very first summary judgment motion, correct. So it's not as if you've won and they have to give this $16,000 back. It would seem to me the best you can urge is that we remand this for a calculation as to how much of that $16,000 might or might not have to come back to you. Except that we argued below that that $16,000, that sort of was illusory, because they can't and haven't- The $16,000 what? No, I'm sorry, that the right of recovery. I'm sorry, that the $16,000 that was set off on claims had been paid directly to Mr. Francesco, but they cannot prove it. The panel didn't give you a victory on that, it most remanded. And then the question is whether the remand covers this, whether this is the calculation the remand meant. But I don't think you can point us to anything in the panel decision that suggests you get $16,000 back. Well, if the panel says that you have not proven your right to recover a dollar under your own subtraction provision, then it would follow that the $16,000 that they took from her was, we can go to district court. With that decision, we can go to district court, I think it's pretty plain. But- Well, the remand orders, we remanded for the district court to determine the amount of money the fund is entitled to recover. Right. And it looks like- It contemplates that the fund is going to be allowed to recover something, it's going to be remanded to figure out how much. And I think the fund has shown their evidence and they're entitled to zero. There's no expert testimony, there's no testimony from the employer's plan. There's nothing to show what the plan would have paid a dollar or not paid a dollar. They're saying it doesn't matter, but there's nothing showing what the fund would have paid $1 on any single claim. They just haven't done it. They've had opportunities the first time around and now the second time around. They've never tried. I don't know how many times they have to come back and forth on that issue. They've had ample opportunity to prove their own subtraction provision under the plan. I haven't yet gotten caught in the attorney's version. That's where I'm in the unenviable position of having to, I assume my arbitrary had been paid. I haven't. And I think the district court really set too high a bar. That is, they have said that, the judge basically said, we can't get attorney's fees unless we prove, unless we win under the arbitrary and comparison standard. You won under the de novo standard. Now, she got the same success on her claim under either standard. But unless you prove it was arbitrary depreciation, then you don't satisfy Hart. And unless you prove bad faith, you don't satisfy Chambliss. It just has nothing to do with the law in this circuit. And that the Hart issue is an easy one. These were imposed as absolutes. I'm looking at the district judge's opinion. It identifies five Chambliss factors. And then it suggests that they don't weigh in your favor. I have no idea. There's one paragraph. The analysis, if there is any, is in one paragraph. And it says, you haven't proven bad faith. And because you haven't proven bad faith, you lose on the first factor, and it won't be a deterrent because there's no bad faith. So you're going to lose on the third factor too. But this court has said time and again that there is no requirement of bad faith in the Chambliss factors. I have to say. There's no requirement, but it's a factor that can be considered. Only, well, it's alternative. You need only show bad faith or culpability. If you show culpability, you need not show bad faith at all. Three of opposing parties' culpability or bad faith. That suggests to me that it can consider both, and it can consider them as on a sliding scale, which can be either very seriously against one party or less so. Well, let's look at this case then. We have a, let's look at culpability in this case. We have the fund did not provide the scientific basis for their decision to deny coverage. They didn't even give her a copy of the expert report until after the appeal had been made. They didn't apply their own definition of medical necessity, which Judge Forrest acknowledges in her latest decision. And they didn't base the decision on the particular individual characteristics of her severe claim. So, they used the generic, so. So, Judge, Forrest looked at this. You're looking for a half million dollars in attorney's fees. And it looked at it as a case in which you basically lost, but then got the benefit of the HALO decision, which resulted in your surviving dismissal and therefore getting settlement. Which I understand, it can be viewed as a favorable outcome for you, but I think the judge didn't view it as one that suggested that your labors had brought half a million dollars worth of attorney's fees to that achievement. And then didn't find any of the other factors to weigh in favor of this kind of an award. What's the, what's the error here? I just listed, I mean, the truth is, I believe we established the arbitrary standard, but we didn't have to because this court didn't make us, but I've just laid out. How is this not culpable? They didn't set forth a scientific basis for the decision. They didn't provide a copy of the expert reports. They didn't apply their own definition of medically necessary under the plan. They didn't base the decision on Mr. Desco's individual illness. They used a generic, I think the court even said that our expert, their experts favor Mr. Desco's position. So- We've said in the past that fees are appropriate unless there's some justification for not doing so. And a change in the law doesn't make it inappropriate to award fees, does it? Two things on that. First of all, as we argued, a change in the law is not entirely clear. That is, they had the department of, the ERISA regulations were promulgated in the year 2000. And they flat out say, as our brief shows, that they're not entitled to deference. That is, claims are deemed exhausted if they don't follow their own guidelines. And so that's Department of Labor regulations established that back in 2000. And I'm going to, so I have to come back and say, judges don't discuss. I don't want to hear this under de novo from my client. If I'm going to get attorney's fees, I've got to win under arbitrary intercommission standards, so let's argue that. It puts me in a very rough position here. I win the case for the client, basically. We can all acknowledge that on that issue. And now I'm being criticized for the standard under which I won it. I don't understand. This is not about the defense counsel's bad faith arguing. It's about the defendant's culpability in when they deny these claims. You reserve three minutes for rebuttal. Yes. We'll hear from the IBEW. Thank you. Thank you, Your Honors. This is an ERISA case, and I think we all recognize that. And I emphasize that because this issue, the third cause of action on the offsets, raises the classic ERISA problem. On March 27th, 2014, the fund administrator sent to the plaintiff, Ms. Tedesco, a letter. And in that letter, they said, you violated the coordination of benefits rules of the plant. As a result, we have a right to recover amounts that we paid improperly by offset. And with the letter was several pages of spreadsheets showing how much was due. That was never appealed to the trustees. We come to this court, and so the district court says, you didn't exhaust. What's the purpose of exhausting? So that you go back and you say to the trustees, these numbers are wrong. You've calculated it improperly. That never happened. It comes here and HALO gets decided. And as you may recall, Your Honors said that regardless of exhaustion, even if we assume exhaustion because, it didn't say because of HALO, but I think that's what you were saying, the claim fails on the merits. What were the merits? The plaintiff was claiming, much like he's being claimed today, that you can't do it, you can't figure it out. That issue was decided when this court said it fails as a matter of law because. So what do you read us as having done when we issued Tedesco 1? Let me get to the next part of, that's exactly where I was going. There is a difference between, in an ERISA case, an offset claim, which is, I hate to use the term, but it's self-help. The trustees, the administrator makes a decision, and there is a process to go through to contest that, so that Your Honors, and the district court for that matter, doesn't sit there with 190 pages of record, which we submitted, describing how we calculated the amount due, and have to figure it out. When we filed our counterclaim, we filed it to obtain the court's jurisdiction to impose an equitable trust on Mr. Tedesco's assets to collect the money. Once again, after we get the judgment, the Supreme Court rules in Montanale that it's not enough to just attach those assets. You have to show the specific amount that's still there. Well, when we file a counterclaim, we need to show the amount that's due, because we want a judgment so that we can go attach that account. We can only do that if we have a liquidated amount. But when we do an offset, that's an internal process. That's the failure in this suit. The confusion was because the original decision, at that time, when Judge Forrest granted a summary judgment, we still had the counterclaim. And that's why it, yeah, it got mushed together somewhat. After Montanale came out, the judge decided in October of 2015, summary judgment for the defendants. Montanale came out January 1st, or January 10th, or in any event, that January. So we withdrew the claim because we realized we couldn't show, even if we got a liquidated amount, we didn't believe that we could trace that amount. He dismissed that counterclaim. Exactly. That's why when we went back to the district court, we did two things. We said, Judge, here's the proof. You don't need an expert to figure this out. You look at the plan that we got from the plaintiff. We looked at their coverage. This is what the fund does all the time. We looked at our coverage, their coverage, figured out what we would have paid, what they would have paid, calculated it, and set it before the judge. But we also pointed out that there was no case of controversy at that time. Why was there no case of controversy? Because the counterclaim that would have required the court to impose a judgment, a liquidated amount, was withdrawn. And the plaintiff had never appealed to the trustees to say, get the wrong amount, calculations are wrong. That's not the amount that would have been paid under this insurance policy from the employer. The case was, to all intents and purposes, over. Exactly. It was over even when we remanded it. Exactly. Can anybody tell us that? I'm sorry? Can anybody tell us that? Well, I didn't know that . . . We argued that, yes, but we did not know that the court was going to remand at that point. We didn't know that until we got the court's remand order. Otherwise, we would have explained it as we have now, but I did not think that that's what was going to happen. Otherwise, I would have made the argument that I'm articulating right now. So, when it was remanded to the district court, the district court affirmed the status quo because your counterclaim had been discontinued. She did not order any money from Ms. Tedesco, and there the case stands. Correct. Why is it Mr. Weinstein entitled to attorney's fees? He's not entitled to attorney's fees because all of the arguments that he's made thus far about they didn't do this, they didn't do that, they didn't- Let me just interrupt for a second. Isn't it the default position in ERISA cases that unless there's some problem, attorney's fees are awarded to encourage this kind of litigation? Isn't that true? I think that's true with Title VII actions. No, I think with ERISA too, especially with ERISA. So that people vindicate their rights. There were no rights vindicated here, and I can explain why there were no rights vindicated here. There were five causes of action. Four were dismissed outright at the district court. Actually, all five were dismissed on the first go around. Actually, Mrs. Tedesco got many more services for her illness, for her condition, because of this suit, didn't she? No. She got it in connection with this suit? No. Well, then I'm not reading the record correctly. I'll ask Mr. Weinstein. I think she got many more services because she brought this suit. If I may explain exactly what happened. There were five causes of action. All five were dismissed. We come up to your honors the first time, and there were two causes of action that were appealed. One was the first cause of action over obtaining the benefit, the treatment. The third cause of action was the one on the offsets. With respect to the third cause of action, we went back down, the judge ordered nothing. The first cause of action- Were they dismissed because she got the services? Weren't they dismissed because she gave her the services that she was asking for? No. When the case was remanded on the first cause of action, there were two parts to that. One was a claim, it was half of the first cause of action. One was a claim of the right to continue treatment with her treating psychiatrist. The district court reaffirmed her decision, now under the new vote standard, affirmed her decision and dismissed that claim. Said no right to continue treatment the way she wanted. She continued to receive treatment, but she was supposed to recertify. That was part of the dispute. The other issue dealt with the social worker. What was at issue at that point were what we computed was about $10,000 worth of services. Years from 2014, we said, okay, we have to bring our psychiatrist in. The judge didn't rule against it, she said, they're going to be dueling experts here. We'll have to bring our psychiatrist in. We looked at it, $10,000, we said, let's settle it. You paid her. We, well, no, well, that- She got those services, didn't she? She had gotten the services before, but now we said, okay, we'll reimburse the service provider and or her $10,000. So how do you say she didn't achieve anything? This was a settlement. It was a settlement? Yes, it was a settlement, Your Honor. But she got more services because she brought this lawsuit. Well, Your Honor, if we're going, I suppose part of the argument that we rendered is we could have gone to trial and we might very well have won. It was $10,000, are we being punished now because we've settled the claim rather than- You're not being punished. You're being punished because when I said, didn't she get more services? You looked me in the eye and said no, when you just admit that she did. She didn't get future services. She got- I thought she got a fund for future services. Well, as she could always apply to get those future services, there's nothing that prevents any beneficiary from applying, seeking those services. But we said, okay, we'll give you those services. So this goes back to the question I asked you, why isn't Mr. Weinstein entitled to fees? This lawsuit achieved some benefits for Mrs. Tedesco. I don't know how much it was worth, but she got a settlement of the lawsuit and it got paid for services that originally you were not willing to pay for. Is that correct? That's correct. That's all. That would satisfy the heart part of the test, that is a degree of success. The next issue is, were we culpable? The judge held we- You don't have to be culpable for him to get fees. No, but as- You don't have to be culpable. That's correct, Your Honor. And you did violate the rules, otherwise we wouldn't be here. At the time we made the decision, we didn't violate any rules. It was HALO after the fact that resulted in the case being sent down. We got summary judgment below under the existing rules at the time that we made the summary judgment motion. It was after that that the rules were changed. So to call us culpable because- Well, but at the time, how could we be culpable if we satisfied the rules that had existed that time? It's not like we would, we just ignored the rules and said no. Mr. Weinstein doesn't need me to toot his horn, but he brought this lawsuit. The rules changed, he understood what happened, and he came back to our court. Isn't he entitled to be paid for those services? Judge Forrest said no. She was the judge- That's the good news about us being here. She was, I don't know if it's good for me, she was the judge who saw what was happening. And the question is, is this an abuse of discretion? You know that. I don't think, though, that you can ask us to look on achievement of some success as a culpability question. No. I had understood the courts to say that achievement of some degree of success makes plaintiff eligible for benefits. The court can award them. In deciding whether to exercise its discretion to award them, the court can consider various factors including the degree of culpability, the degree of bad faith. Judge Forrest thought those weighed in your favor. But I don't think you can argue that because you were not found to have been in bad faith, I think whether you were found culpable is not as clear on her opinion, that that automatically means you don't have to pay. It's just a factor that weighs in your favor. Yes, you've articulated it much more clearly than I was trying to articulate it, and that's the judgment that Judge Forrest exercised at that time. So now we get to whether, the plaintiff's eligible for fees. Judge Forrest identifies these factors and concludes that in the end she's not going to exercise her discretion to award them. And is there error in how she reached that conclusion? You're saying no. I'm saying no. It was not just error, but this court has said many times, it's an abuse of discretion. She used the right standard, Hart and Chambliss. The facts upon which she relied really weren't in dispute. We won all those. We settled that one piece. The only thing that we have the issue about now is the third cause of action on offsets. And- Your adversary's argument, though, is that she didn't just treat these as factors to be considered. She treated them as requirements. And that she found, she was basically taking the view that unless you were culpable, unless you were in bad faith, unless these other factors were shown, that the plaintiff could not recover fees. And your response to that argument is what? I don't think that's what Judge Forrest did. I think what she did is she looked at the five standards. She looked at the ones that, in her applying the facts of this case, to those standards, determined that the most important ones did not support a claim for the plaintiff they tipped in our favor. And the other ones that she didn't talk about didn't tip in the plaintiff's favor. That's the way I read the decision. Would an award of attorney's fees have to be paid out of the ERISA fund? Would it have to be paid out of the fund? Yes. Or is there some other source? I only ask that because, of course, courts are always concerned about depleting the ERISA fund. The answer, and we did argue this, the answer, Your Honors, is that this is an insured claim. So the insurance company will be paying the fees. However, our insurance rates, as far as it's going, the participants pay for it. Yeah, there are 8 million stories in the naked city. Thank you. Thank you very much. Time is up. Mr. Weinstein, you have three minutes for rebuttal. I don't think I'll need them all. Thank you, Your Honor. The subtraction provision applies. The subtraction from their plan applies whether they're seeking a judgment in counterclaim or they're seeking to recover through whatever they call self-help or right of set-off. They still have to apply the subtraction provision. If we're to look at the fund's letter from March of 2014, which is A406. First of all, the letter says nothing about subtraction, nothing about penalties. What they say is every dollar that we paid you was an overpayment. Then they went back and said, wait a second, we forgot to deduct the $12 per claim because we're going to pay 80% of your co-pay. But their position is, right up front, every dollar was an overpayment. Was it the trustee, as your adversary suggests it was not? I'm sorry, sir. Was the argument you are making to us made to the trustee back at the time that Ms. Tedesco got the letter indicating what was going to be offset? That's a fair question, and so- That's why I ask it. What's the answer? Well, there's two answers. I guess the one word answer is no with an explanation. The trustees put this issue before the court in a counterclaim. So I think at that point, we're entitled to fight the counterclaim at the same time, and all the issues are merged together. You're suggesting that by making the counterclaim, and I'll let you get to your plus in just a second. But by making the counterclaim, they somehow waived the argument that it should have been made to the trustee, and therefore, Judge Forrest was wrong in saying you never argued this to the trustee, and therefore, you waived. I think, well, no. I think the March 2014 letter, again, which is an A406, suffers from some of the same problems that we had on the lack of medical necessity. How is she supposed to appeal their decision when they don't provide a calculation or a basis, or even cite the portion of the plan that says, here's why these were overpayments. These are overpayments because we subtracted what your employer's plan would have paid. We're applying a subtraction provision from our plan, and therefore, this is our calculation. If they don't provide a calculation, if they don't provide a basis or any kind of explanation other than every dollar we paid you was an overpayment, then what does she have to appeal from? There's no explanation, there's no decision. Was this argument, the one that you've just articulated now, made to the district court back at the time when you filed the first? 100% yes, although I have to, I don't have all of that in front of me right now. In fact, a- This need to be remanded to the district court so that the district court can do the analysis of whether there was a basis or an adequate way for Ms. Tedesco to appeal the decision to the trustee. God no, I hope not, but the- But what do you want us to do with it? We sent it back the first time for a recalculation. What I wanted to do, what I would like the court to do, is to enforce the prior order. The prior order said that the fund must, in order to, it must calculate through exercise of their subtraction provision by deducting what Tedesco's employer's plan would have paid on every claim. What I'd like the court to do is say you didn't do it. We remand for the district court to determine the amount of money the fund is entitled to recover. Through exercise of that- I don't see those words. We don't say anything after recover, isn't that where the sentence is? I'm perplexed as to your answer about why you couldn't appeal. You're telling us you want the credit for the full 16,000. That's certainly an argument you could have made on the initial appeal, or am I missing something? We did, what we argued before was that this subtraction provision is illusory. That is, they cannot and they have not established what the employer's plan would have paid. They put the same, in fact, the Defoe, the administrator's affidavit that they submitted, I believe the same affidavit that he submitted in the first summary judgment order. So- Let's say she had just gotten a piece of paper which said, look, we're subtracting $12 or 16 or whatever it is for every claim that you're making for the use of the social worker services. All right, what's wrong with that? Because that's not what- And she says, I'm appealing this, that's not right. Right, because if you read the subtraction provision, they have to subtract what her employer's plan would have paid. The employer's plan wasn't paying $12.60. I understand that, but the trustee for the fund from which she is receiving payment, which is claiming the offset says, but we're going to pay some of this, but we're offsetting this per visit, right? She got something that said that. There's no document that says, they wanted every penny, they were offsetting all of it. So what they gave her was a breakdown of all her claims, and then showed her, we're paying zero on all of these claims. Because every amount that we paid you prior, we're considering an overpayment. All right. That's what they did from the beginning. That's not saying- Why doesn't she then, with that piece of paper, say, I'm appealing this, this is wrong, this isn't right? Well, two things. Number one is, we're on the cusp of filing a complaint on the medical necessity issue, which was already through the pike. And again, there's no explanation in the letter. What am I supposed to appeal? Are you in a position to point out what your primary insurer was paying? Well, the answer is no, because if she's not in the plan, she can't submit her bill. She can't- I understand. How is she going to- You hadn't applied for her own- So she can't ask for some sort of advisory decision from an insurer. What would you pay? If I were insured by you, what would you pay under this plan? That's why I suggested they would have needed an expert on this, or taken testimony from the employer's plan. They didn't do it. But she can't seek some sort of advisory- I'm not sure what she could or could not have obtained in discovery. But the point is that you did not try to point to any evidence that the ERISA plan had miscalculated this. The reason why it's hard, there are separate plans she could have chosen. That's a whole other level of confusion. That's the point. Your client was found not to have done what she was supposed to have done, which is go into her employer's plan. And I'm not sure I understand why you didn't have the burden below to say, well, I understand that I'm at fault for that, but you can't ask for the whole 16,000 back. Because if I'd gone into the plan, there would have been this, that, or the other coverage. The answer is, as Mr. Smith said- I'm just not sure why they had to believe it, rather than you having to believe it. Because it is their subtract, they're the ones who want to take self-help. They want to say, we are not going to pay you your benefits. And we're going to use a subtraction provision in our document. Then- This is the confusion about the whole thing. They dropped their claim. So they're not looking for that. You are looking for a part of the 16,000 back. So it's now your burden to show how much of that 16,000 you may be entitled to. No, we're saying that they unlawfully took $16,000 from us when they didn't apply their own plan provision correctly. She took our money. She stole her money. See, they're fiduciary. This is theft. So is the argument because, in your view then, is the argument that because they didn't do it right, we said to you last time, or they didn't follow the rule, you get another bite at the apple? They got another bite at the apple. The fund had another bite at the apple to establish for the district court and ultimately for this court, what the fund, their subtraction provision. What would the fund, her employer's plan would have paid on any particular claim? That's their burden. It's their provision. It's their contract. And you made this claim below to the district court this last time before you- We 100% argue that it's the burden of proof is on the fund. Did you make the argument that you're making to us now to the district court when you were last in front of the district court just this last time? Yes, the burden of proof is on the fund to establish the subtraction provision. It's their contract. They want to enforce the contract. It's their burden of proof. And that was advanced in a memorandum? In a memorandum, yes. I don't have the memorandum handy, but I would 100% certainty will say that we made that argument. I think Mr. Smith would acknowledge it, that we placed the burden on the defendants, on the appellees to establish the set off. With the presider's permission, could you just send us a letter indicating where that is in the record? I can. Is that- If that's acceptable. Of course. By through the ECF system? Through the regular online? Yes, just send us a citation to the- Can we set a date for that by Friday of this week? By Friday of this week would be, can you do that? I'll do it today. Today is even better. Thank you. Thank you. So just, but online filing, no direct- Online filing. Yes, thank you. Thank you both. We'll reserve decision.